## Case No. 13,456.

### STIMPSON v. RAILROADS, The.

[1 Wall. Jr. 164.] [1]

Circuit Court, Third Circuit. April Term, 1847.

PATENTS—DAMAGES—COUNSEL FEES—APPEAL—
EXCEPTION.

1. A jury cannot allow the plaintiff in a patent case, as part of his actual damages, any expenditure for counsel fees or other charges, even though necessarily incurred to vindicate the rights given him by his patent, and though not taxable costs.

[Cited in The Margaret v. The Connestoga, Case No. 9,070; Oelrichs v. Spain, 15 Wall. (82 U. S.) 230.]

[See Bancroft v. Acton. Case No. 833.]

2. Where, however, a jury did make such allowance under a direction from the court, conceded afterwards to be erroneous, their verdict was sustained by way of an exception; the misdirection of the court not having been assigned as a reason for new trial, the expenditures having been proved to be paid, and the verdict having attained, though improperly, the same result nearly that the court, in its power to treble the damages, might have reached in a regular way.

[Cited in Pegram v. Stortz, 31 W. Va. 250, 6 S. E. 501.]

Stimpson brought sixteen suits against different railroad companies or proprietors for infringing his patent for railroad curves [granted September 26, 1835]. The validity of his patent having been settled by a previous decision, the only question in these cases was the amount of damages which it was agreed should be assessed in all the cases by the same jury. As part of the evidence of damages, the court, upon the authority of a decision of Judge Story,—Boston Manuf'g Co. v. Fiske [Case No. 1,681],—and with considerable reluctance, allowed the plaintiff to prove the value of the time he had given, with the amount of the counsel fees and other expenses, not taxable costs, which he had necessarily paid in the prosecution of these sixteen suits, and, in charging the jury, directed them, in the language of Judge Story, that "they were at liberty, if they saw fit, to allow the plaintiff as part of his actual damages any expenditures for counsel fees or other charges which were necessarily incurred to vindicate the rights derived under his patent, and are not taxable in the bill of costs." The verdicts which were for the plaintiff, shewed by their amounts that all these expenses had been assessed by the jury as damages. After the verdicts, the defendants, on the one hand, moved for a new trial because the damages were excessive, though not because of the direction of the court on the subject of damages. The plaintiff, on the other hand, moved to treble these damages as already found. In connexion with the last motion it is requisite to state that by an act of congress (Act April 17, 1800, c. 25, § 3 [2 Stat. 38]), now repealed, it was enacted that any person in-

[1] [Reported by John William Wallace, Esq.]

fringing a patent "shall forfeit and pay, &c. a sum equal to the actual damages sustained by the patentee," and by a subsequent act (Act July 4, 1836, c. 357, § 14 [5 Stat. 123]), still in force, that where the verdict is for the plaintiff, "it shall be in the power of the court to render judgment for any sum above the amount found by such verdict as the actual damages sustained by the plaintiff, not exceeding three times the amount thereof, according to the circumstances of the case, with costs."

After full argument by Mr. W. L. Hirst and Mr. White, for the plaintiff, and Mr. Clarkson and Mr. Saunders Lewis, on the other side, both motions were now disposed of as follows by—

GRIER, Circuit Justice. I do not think that excessive damages, the reason urged for a new trial in these cases, is sufficient to justify the court in granting the motion, it being conceded that the verdict was in accordance with the directions of the court. As the law formerly stood, where the court without any exercise of their discretion were compelled to treble the damages, cases might occur in which a court would feel it to be their duty to set aside a verdict because the damages were excessive. And even then, they would require a case which appealed strongly to their sense of justice, before they would disregard the opinion of twelve men on matters of fact which it was their peculiar province to decide. Since the act of 4th July, 1836, the court are not compelled to treble the actual damages assessed by the jury, but may increase them or not at their discretion within that limit. In the exercise of that discretion the court will judge for themselves, and will not increase the damages, if in their opinion the jury have already exceeded the proper measure.

There was however a portion of our charge to the jury the correctness of which we doubted when we gave it, and which on more mature consideration we are ready to admit was erroneous. It was that which relates to the evidence of damages; where upon the authority of Mr. Justice Story, we directed the jury, not without an expression of some doubt as to the correctness of the law as so laid down, that "if they saw fit to allow the plaintiff as part of his actual damages, any expenditures for counsel fees or other charges, which are necessarily incurred to vindicate the rights derived under his patent and are not taxable in his bill of costs, they might say so."

If the counsel for the defendants had insisted on this error as a ground for a new trial in these numerous cases, we should have felt ourselves compelled to grant it. But as in the exercise of the discretion intrusted to us of increasing the damages, we may neutralise the effect of this error, we think the ends of justice may be attained, though somewhat irregularly, without put-

ting the parties to the expense and trouble incident to so many new trials.

In thus disposing of both these motions, I will take occasion to state why I venture to differ from the very learned judge on whose authority alone I was induced to give my instruction on this point to the jury.

I do not think that the practice of courts of admiralty, which Judge Story would seem to have had a good deal in his mind, affords any proper precedent for courts which are governed by the common law. Courts of admiralty proceed according to the principles of the civil law; and costs are awarded at the discretion of the judge, and are paid by such parties and to such an extent as he may judge equitable and right according to the circumstances of each case. The rule of our law is different. There were no costs given at common law, but if the plaintiff did not prevail he was amerced pro falso clamore. If he did prevail then the defendant was in misericordiâ for his unjust detention of the plaintiff's right, and therefore was not punished with the expensa litis under that title. But it being thought exceeding hard that the plaintiff for the costs which he was out of pocket in obtaining his right, could not have any amends, the statute of Gloucester (6 Edw. I. c. 1) was passed, which gave costs in all cases where the plaintiff recovered damages. This was the original of costs de incremento; for when the damages were found by the jury, the judges held themselves obliged to tax the moderate fees of counsel and attorneys that attended the cause. See Bac. Abr. tit. "Costs," A.

Under the provisions of this statute, every court of common law has established a system of costs which are allowed to the party who succeeds in a cause, by way of amends for his expense and trouble in prosecuting or defending his suit. It may be true no doubt, and is especially so in this country (where the legislatures of the different states have so jealously reduced attorney's fee bills, and refused to allow the honorarium paid to counsel to be exacted from the losing party,) that the legal taxed costs are far below the real expenses incurred by the litigant. Yet it is all the law allows as expensa litis. If the jury may, "if they see fit," allow counsel fees and expenses as part of the actual damages incurred by the plaintiff, and then the court add legal costs de incremento, the defendant may truly be said to be in misericordiâ, being at the mercy both of court and jury.

In courts governed by the civil law, if the court may give costs and expenses according to their discretion to the plaintiff, they can also exercise the same discretion in favour of the defendant when he has been unjustly harassed. If the jury can exercise this wide discretion of giving incremental costs to a plaintiff under the name of actual damages, why should they not be allowed to give them to the defendant when he succeeds?

He has certainly as good a right to them as the plaintiff, both in law and equity. On every principle of morals a plaintiff would be as liable to punishment pro falso clamore, as the defendant, for the unjust detention of the plaintiff's right. If this principle be introduced from the civil law, both parties should have the benefit of it. A defendant should not be left to contend with such odds against him. In actions of debt, covenant, assumpsit, &c. where the plaintiff always recovers his "actual damages," he can recover but legal costs as compensation for his expenditure in the suit, and as punishment to defendant for his unjust detention of the debt. His equity is no greater, nor his injury of a higher order, where his action is for a trespass or a tort. It is a moral offence of no higher nature to infringe a patent, than to detain a just debt. Why then shall the law give the plaintiff such an advantage over the defendant in the one case, and not in the other? There is certainly nothing in the act of congress, or in the phrase "actual damages," which it uses, to countenance the doctrine. The term "actual damages," cannot be construed to mean exemplary, vindictive, or punitory damages inflicted by way of smart-money, or punishment of the defendant for fraudulent, malicious or outrageous wrongs.

Before 1836, the law compelled the court to treble the "actual damages" found by the jury. This was intended, no doubt, to punish the defendant, and thus indirectly remunerate the plaintiff for his extra expenditures in establishing his patent. This law was found to act unequally, for defendants were often found to have the prior invention and to have been unjustly harassed by the plaintiff, and yet they recovered nothing but costs. Often where the plaintiff recovered, the contention was a bona fide one, on the respective interests or titles of the parties: it was, therefore, obviously unjust in such a contest that the plaintiff should recover treble damages, if he succeeded, while the defendant could recover nothing. It was for this reason that the act of 1836 submitted the question of trebling the damages to the discretion of the court, and thus left the parties to contend on a more equal field. The defendant suffers the infliction of vindictive damages only when the court are of opinion he has acted unreasonably or oppressively.

It is a well settled doctrine of the common law, though somewhat disputed of late (10 Law Rep. p. 49), that a jury in actions of trespass or tort may inflict exemplary or vindictive damages upon a defendant, having in view the enormity of defendant's conduct rather than compensation to the plaintiff. Indeed in many actions such as slander, libel, seduction, &c. there is no measure of damages by which they can be given as compensation for an injury, but are inflicted wholly with a view to punish, and make an example of the defendants. But in no case is the degree of the defendant's delinquency measured by the ex-

penses of the plaintiff in prosecuting the suit. The plaintiff, it is true, is thus indirectly compensated for his expenses, but it is not this measure of defendant's punishment, nor a necessary element in its infliction.

The doctrine for which we here contend is supported by the best authority. Arcambel v. Wiseman, 3 Dall. [3 U. S.] 306, which Judge Story admits is in conflict with him, carried it so far as to apply it to cases of admiralty, and Judge Story's own decision was a complete reversal of a rule which he had himself previously established on the authority of that case. In a Massachusetts case (Barnard v. Poor, 21 Pick 378-382), more recent than any of these decisions, Chief Justice Shaw, after remarking upon the notion that had once prevailed on the subject, says: "It is now well settled that even in an action of trespass or other action sounding in damages, the counsel fees and other expenses of prosecuting the suit not included in the taxed costs, cannot be taken into consideration in assessing damages." And in another (Lincoln v. Saratoga & S. R. Co., 23 Wend. 425-435), in New York, Chief Justice Neilson says: "The charge as to expenses beyond taxable costs and counsel fees, in conducting the suit, as a particular item of damages to be taken into the account, I am also inclined to think was erroneous. These have been fixed by law, which is as applicable to cases sounding in damages as in debt." He refers to the case in Massachusetts, and approves of it "on principle."

A case in Connecticut (Linsley v. Bushnell, 15 Conn. 226), I am aware, is an apparent authority for a contrary doctrine. But the main question discussed in the opinion of the court, is whether a jury may give vindictive or exemplary damages in an action for a tort, against a defendant who has acted with gross negligence: and the proposition that the plaintiff's counsel fees and expenses should be assumed as the exact measure of the defendant's punishment, seems to have been founded on some custom or practice peculiar to the state of Connecticut, and not on any principle of the common law. The court was not unanimous, and Mr. Justice Waite who dissented from the majority, uses some arguments on this point which I have not seen answered.

Convinced, therefore, that the doctrine I laid down to the jury on the trial of these cases, is not founded on the well established principles of the common law, and that it would work inequality and injustice. I take this opportunity to retract it: and say that hereafter, such evidence as was then given, will not be objected to, if permitted to go to the jury, nor will the court instruct the jury. "that they are at liberty if they see fit, to allow the plaintiff as part of his actual damages, any expenditures for counsel fees, &c. incurred to vindicate his rights and not taxable in the bill of costs." If such expenditures are proper elements of actual damages, the jury should have no discretion to omit them: if not, the jury should not be permitted to add them. It is a principle of too much importance to be submitted to their arbitrary discretion. In almost every instance where I have seen it done, they have assessed more than treble the amount of actual damages, while the court have been called on to add to the injustice, by trebling them again. Patentees should be protected liberally by the law: but their wrongs should not be made subject to speculation and extortion.

Both rules dismissed.

[For other cases involving this patent, see Philadelphia & T. R. Co. v. Stimpson, 14 Pet. (39 U. S.) 448.]